## CIA. LUZ STEARICA v. UNITED STATES.

### No. 15036.

United States District Court
W. D. Washington, Northern Division.

Nov. 17, 1949.

Merritt, Summers & Bucey, and Charles B. Howard, Seattle, Washington, for libelant.

Bogle, Bogle & Gates, and Claude E. Wakefield, and M. Bayard Crutcher, Seattle, Washington, for respondent.

J. Charles Dennis, United States Attorney, Seattle, Washington, for respondent.

BOWEN, Chief Judge.

The evidence seems to the Court to be complete from the point of view of the theory of each side. There is no dispute as to the quantity of goods shipped. That is made certainly to appear in the statements in the bills of lading. The only question is concerning the cause of the

claimed damage and as to the amount in terms of dollars or cruzeiros of the damage.

The libelant by a preponderance of the evidence has established and the Court finds, concludes and decides therefrom that the goods consisting of sacks of flour were received by the respondent on board its steamship Sweepstakes at New York for shipment to Rio de Janeiro in apparent good order and condition, and that the flour was also in actual good condition at the time it was so received by the defendant carrier. Such actual good order and condition is established by the testimony of the mate, who testified that, while he came aboard the ship after the loading onto the ship had commenced, he did observe the condition of the goods after he came aboard sufficiently to determine and he did determine that the goods appeared to be in good order and condition.

■ The Court so finds that the goods were discharged at Rio de Janeiro in bad order and condition as claimed by libelant, and that the cause of such bad order and condition and damaged condition as claimed by libelant was in the nature of sea water damage, and that such sea water damage was caused to the goods while they were in the possession of the respondent as carrier of the goods.

The Court so finds that the damage was on account of sea water contact with the goods while in the possession of the carrier, because the only opportunity disclosed by the evidence for sea water contamination was while the goods were in the possession of the carrier on board the ship in transit from New York to Rio de Janeiro. There is disclosed by the evidence no other possibility of sea water contamination.

There is no positive eyewitness proof that, between the time of taking the goods aboard the vessel at New York and the discharge of the goods from the vessel at Rio de Janeiro, they were actually brought in contact with sea water, but it is possible that from some cause unknown during the voyage the sea water was permitted to contact the goods either by passage in and about the deck and stowage place on the vessel while the sea water was in liquid form as water, or by coming aboard in and about the cargo stowage space in the form of ocean spray. These possibilities are inferences from the fact that the ship made a voyage from New York to Rio de Janeiro with these goods on board after they were received on board in apparent and in actual good condition, and from the fact that no other possibility for contact of sea water with the goods was indicated by the evidence.

The Court believes that by the communication dated the 2nd of March, following the commencement of discharge of the cargo at Rio de Janeiro on February 21, the respondent had as good an opportunity to make an analysis of the damage as did the libelant. The Court has no doubt of the correctness of the fact as to the nature of the damage as found by libelant's witness, Dr. Barreto. Everything connected with his deposition points to unquestioned credibility of his testimony, and I see no fact or proper inference of fact which to my mind would tend to dispute or undermine the truthfulness of his statements as to cause of damage.

I do not find any fact or circumstance in the evidence as to what occurred from the time of discharge of the goods from the vessel until their arrival at the libelant's warehouse or mill which would give rise to or establish or tend to prove that the goods were damaged by sea water or were damaged at all while being unloaded from ship to dock and/or while being transferred from dock to libelant's mill or warehouse.

By reason of all of these things mentioned by the Court, and from a preponderance of all the evidence, the Court finds, concludes and decides that the goods were damaged, as alleged, by the respondent, more specifically by respondent's improper care of the goods while they were in transit, and that the damage was caused by the respondent's negligently permitting the goods to be contacted by sea water while the goods were in transit on board the respondent's vessel Sweepstakes from New York to Rio de Janeiro.

■ The Court further so finds, concludes and decides that the extent and

amount of the damage which the libelant has sustained by reason of the salt water damage to the goods is approximately in the amount claimed by libelant, the detail of which the Court asks counsel to consider between now and the date to be fixed by the Court for settling and entering of findings of fact, conclusions of law and decree, and if on that date counsel cannot between themselves agree as to what is the proper amount of the damage, then the Court will on that date fix the specific amount of such damage.

Mr. Crutcher: Is Your Honor fixing 35 percent or 40 percent?

The Court: The Court fixes 35 percent as the depreciation in the condition and value of the goods.